UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| OLIVER LYONS,<br>    Plaintiff,<br><br>v.<br><br>ASHBEL T. WALL, II, et al.,<br>    Defendants. | C.A. No. 08-498-M |

## MEMORANDUM AND ORDER

JOHN J. McCONNELL, JR., United States District Judge.

This case involves allegations by Oliver Lyons, a *pro se* inmate at the Adult Correctional Institution (ACI) in Cranston, Rhode Island. In his Second Amended Complaint (Complaint), Mr. Lyons alleges that various individuals affiliated with the Rhode Island Department of Corrections (DOC), including its director, several correctional officers (COs) and two doctors, have violated his constitutional rights. (ECF No. 34.)[1]

Before the Court is a Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 141) pressed by the following nine defendants: (i) CO Allard; (ii) Deputy Warden Auger; (iii) CO Duarte; (iv) Captain Duffy; (v) Investigator Figueiredo; (vi) CO Lamontagne;[2] (vii) CO Tomassi; (viii) Director Wall; and (ix) Warden

---

[1] This is Mr. Lyons' fifth case filed in this Court. His four prior actions in the United States District Court for the District of Rhode Island: (i) C.A. No. 04-380; (ii) C.A. No. 05-94 (iii) C.A. No. 05-433; and (iv) C.A. No. 06-257.

[2] In the Complaint, Mr. Lyons refers to this defendant as Lamontange. In the motion to dismiss and accompanying memorandum, this defendant's counsel refers to him as both Lamontagne and Lamontange. The Court will use Lamontagne.

Weeden.[3] (ECF No. 141.) Mr. Lyons objected to the Motion to Dismiss, (ECF No. 145), and sent a letter to the Court alleging that the Motion to Dismiss was untimely. (ECF No. 150.)

## I. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of an action that fails "to state a claim upon which relief can be granted." When reviewing a motion filed under Rule 12(b)(6), courts "accept well-pleaded facts as true and draw all reasonable inferences from those facts in favor of the plaintiff." *Figueroa v. Rivera*, 147 F.3d 77, 80 (1st Cir. 1998).[4] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In addition, the allegations in the complaint must describe which defendant is linked with the specific conditions of which the plaintiff complains. *See Redondo Waste Sys., Inc., v. López-Freytes*, 659 F.3d 136, 140 (1st Cir. 2011) ("complaint must allege facts linking each defendant to the grounds on which that particular defendant is potentially liable"). While a *pro se* plaintiff's handwritten complaint must be liberally construed and held to less stringent standards than pleadings by attorneys, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), courts need not credit "bald assertions, unsupportable conclusions . . . and the like." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).

---

[3] The other defendants who joined in the Motion to Dismiss have been terminated for various reasons.

[4] While Defendants' Memorandum in support of their Motion to Dismiss references numerous affidavits, and Plaintiff's Opposition refers to exhibits, the Court considers only the allegations in the Complaint. *See* Fed. R. Civ. P. 12(d).

## II. 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law[5] deprived the plaintiff of a federal constitutional or statutory right. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Further, "the conduct complained of must have been causally connected to the deprivation." *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir. 1989) (quoting *Woodley v. Town of Nantucket*, 645 F.Supp. 1365, 1369 n.4 (D. Mass. 1986)). "As an additional corollary, only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable." *Cepero-Rivera v. Fagundo*, 414 F.3d 124, 129 (1st Cir. 2005). Section 1983 does not create substantive rights, but rather provides a vehicle for enforcing federal constitutional or statutory rights. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Section 1983 plaintiffs, therefore, must identify the particular federal rights infringed. *Id.*

## III. CONSTITUTIONAL CLAIMS

The Complaint is organized in terms of sixteen incidents during which Mr. Lyons contends his constitutional rights were violated, and it contains two causes of action. The sixteen incidents alleged occurred between January 2008 and July 2009. The first cause of action asserts that Mr. Lyons' treatment by defendants and the conditions of his confinement violated his Eighth Amendment rights.[6] (ECF No. 34 at 28-30.) The second cause of action states that an unfair and arbitrary discipline process violated his Fourteenth Amendment procedural due process rights. *Id.* at 30-31.

---

[5] Here, none of the defendants seeking dismissal disputes that they were acting under color of state law.

[6] The Eighth Amendment is applicable to the States by the Fourteenth Amendment. *See Robinson v. California*, 370 U.S. 660, 675 (1962).

3

## A. Eighth Amendment

The Eighth Amendment protects prisoners against the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and citations omitted). The Supreme Court has "indicated that the Eighth Amendment prevents only conditions of confinement that involve the wanton and unnecessary infliction of pain, that deny basic human needs or that are grossly disproportionate to the severity of the crime warranting imprisonment." *Santana v. Collazo*, 714 F.2d 1172, 1179 (1st Cir. 1983) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

To state an Eighth Amendment claim in connection with the conditions of confinement, a plaintiff must allege both that the deprivation is "objectively, sufficiently serious" and that the defendant has a "sufficiently culpable state of mind," one of "deliberate indifference." *Calderon-Ortiz*, 300 F.3d at 64 (quoting *Farmer*, 511 U.S. at 834). The Supreme Court set forth the test for deliberate indifference: "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* In contrast, in an Eighth Amendment excessive force claim, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

sadistically to cause harm." *Wilkins v. Gaddy*, — U.S. —, 130 S.Ct. 1175, 1178 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

### B. Fourteenth Amendment

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Rodi v. Ventetuolo*, 941 F.2d 22, 24 (1st Cir. 1991) (quoting *Ky. Dept. of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)).

To state a Fourteenth Amendment due process claim, an inmate must demonstrate a violation of a life, liberty or property interest. *See Wilkinson*, 545 U.S. 209 at 221. The United States Supreme Court has explained that prisoners' liberty interests are "generally limited to freedom from restraint" imposing "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995). For example, in *Sandin*, the Supreme Court found that a prisoner's punishment of 30 days in disciplinary segregation "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* at 475-76, 486.

### IV. ANALYSIS

The nine defendants seek dismissal on various grounds, some contending that that their alleged conduct did not deprive Mr. Lyons of his constitutional rights and others claiming that they are not alleged to have participated in the rights-violating conduct. Mr. Lyons' argument

that the motion is untimely is without merit: the pending motion was filed on June 8, 2010 (ECF No. 141) and the dispositive motion deadline had been extended to June 29, 2010. (ECF No. 147.)

### A. Defendants CO Allard and CO Lamontagne

Mr. Lyons alleges that on May 1, 2009, CO Allard and CO Lamontagne escorted him into a locked shower. (ECF No. 34 at 20.) A few minutes later, while in the locked shower, an inmate attacked Mr. Lyons "with a mop handle causing a large bruise" on Mr. Lyons' forearm. *Id.*

"Prison officials have a constitutional duty 'not to be deliberately indifferent to the risk to prisoners of violence at the hands of other prisoners.'" *Mosher v. Nelson*, 589 F.3d 488, 493 (1st Cir. 2009) (quoting *Burrell v. Hampshire Cnty.*, 307 F.3d 1, 7 (1st Cir. 2002)).

> A prison official may be liable under the Eighth Amendment for acting with deliberate indifference to inmate health or safety only if the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'

*Calderon-Ortiz*, 300 F.3d at 64 (quoting *Farmer*, 511 U.S. at 837).

Here, the Complaint alleges only that CO Allard and CO Lamontagne escorted him to the shower. There are no allegations that CO Allard or CO Lamontagne knew another inmate was in the shower, nor are there allegations that CO Allard or CO Lamontagne knew that taking Mr. Lyons to the shower would jeopardize his health or safety. Further, there is no allegation that CO Allard or CO Lamontagne could have intervened to prevent or stop the attack. Because the Complaint contains no allegations that CO Allard or CO Lamontagne were aware of any risk whatsoever in taking Mr. Lyons to the shower, the Complaint fails to state a claim against them

in connection with this incident. As the shower escort is the sole allegation against them, CO Allard and CO Lamontagne are DISMISSED.

### B. Defendants Deputy Warden Auger and Captain Duffy

Mr. Lyons alleges that on July 9, 2009, he was ordered into a cell with a camera and four-pointed[7] on a steel slab table without a mattress, and his arms were stretched across his body, with his left arm cuffed on the right side and his right arm cuffed on the left side. (ECF No. 34 at 23-24.) He contends that he experienced severe pain and suffering, including difficulty breathing. *Id.* at 23, 25. He further explains that he was able to sit up, which helped his breathing. *Id.* at 25. Then his hands were cuffed behind his back and a helmet was taped to his head, but he removed the helmet with two fingers. *Id.* Around 2 p.m., he was given pain medication by a nurse. *Id.* At some point before 3 p.m., he asked to use a toilet but was not permitted to do so; instead he was provided with a "pamper." *Id.* at 26. Around 4:30 p.m., his cuffs were removed so he could eat, and then he was re-cuffed. *Id.* At about 5 p.m., his cuffs and shackles were removed and he was permitted to use the toilet and to shower. *Id.* at 26-27. It was painful for him to stand, although officers held him up. *Id* Mr. Lyons alleges that these events occurred for almost eight hours, *id.* at 27, and that he was being filmed during that time. *Id.* at 24-27. Mr. Lyons does not allege, however, whether the restraints were used to prevent him from harming himself, used for a penological purpose, or used for some other reason.

Courts faced with Eighth Amendment claims involving the use of restraints have employed both excessive force and conditions of confinement analyses. *Compare, e.g., Williams*

---

[7] The restraints to which Mr. Lyons refers have been described by other courts. For example, one court noted prison officials' use of "four-point restraints" that anchored each of the prisoner's "arms and legs to a different point on the bed." *Campbell v. Sikes*, 169 F.3d 1353, 1358 (11th Cir. 1999). Another court explained that "[p]lacing an inmate under four-point restraints involves shackling the inmate's hands and feet to the four corners of his bed." *Grinter v. Knight*, 532 F.3d 567, 571 n.2 (6th Cir. 2008).

*v. Benjamin*, 77 F.3d 756, 759, 763-64 (4th Cir. 1996) (employing excessive force analysis where an inmate was maced and four-pointed on a bare metal frame without medical care or use of a toilet for eight hours in connection with a prison disturbance) *with Key v. McKinney*, 176 F.3d 1083, 1086 (8th Cir. 1999) (applying *Farmer's* deliberate indifference conditions of confinement standard where prisoner was restrained in handcuffs and leg shackles for 24 hours). In addition, "[t]here is no bright line for determining the length of time that a prisoner can be held in restraints for penological purposes before it rises to the level of an Eighth Amendment violation." *Carter v. Symmes*, C.A. No. 06-10273, 2008 WL 341640, at *6 (D. Mass. Feb. 4, 2008).

In general, an Eighth Amendment excessive force analysis often applies to prison officials making decisions under pressure and it "turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-321 (U.S. 1986) (internal quotation marks and citation omitted). This higher subjective standard is not necessary, however, to state a claim involving conditions of confinement. *See Farmer*, 511 U.S. at 836.

Here, the conditions of confinement analysis is appropriate because Mr. Lyons does not allege anything regarding a security concern or maintaining or restoring discipline. Mr. Lyons does allege that he was placed in restraints per the orders of a doctor (ECF No. 34 at 24); he received medication from a nurse, *id.* at 25;[8] and he has a history of injuring himself. *See, e.g.*, *id.* at 7, 8, 16, 17. Further, in the description of his Eighth Amendment cause of action,

---

[8] The Supreme Court has explained that in regards to Eighth Amendment claims, there is "no significant distinction between claims alleging inadequate medical care and those alleging inadequate 'conditions of confinement.'" *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). Therefore, if Mr. Lyons' complaint is interpreted as a challenge to his medical care as opposed to his conditions of confinement, the Court's analysis would be the same.

Mr. Lyons refers to deliberate indifference several times and he also references the conditions of his confinement. *Id.* at 28-30.[9]

Therefore, to state an Eighth Amendment claim in connection with the events of July 9, 2009, Mr. Lyons must allege that he suffered a deprivation that is "objectively, sufficiently serious" and that the defendants had a "sufficiently culpable state of mind," one of "deliberate indifference." *See Calderon-Ortiz*, 300 F.3d at 64 (quoting *Farmer*, 511 U.S. at 834). Deliberate indifference, as discussed *supra*, means that the prison "official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Deputy Warden Auger and Captain Duffy seek dismissal on the ground that the conditions alleged by Mr. Lyons, while "neither desirable nor pleasant," do not rise to the level of a constitutional violation. (ECF No. 141 at 11-12.)

Deputy Warden Auger is alleged to have told Mr. Lyons that he could be four-pointed in that particular cell for up to two hours and ordered the mattress removed from the table.[10] (ECF No. 34 at 23, 24.) Further, Mr. Lyons alleges that he was four pointed "per" Deputy Warden Auger and Dr. Freidman. *Id.* at 24. During the time he was restrained, Mr. Lyons was treated by a nurse, provided with a diaper, permitted to eat un-cuffed and ultimately had his restraints removed to use a toilet and shower. *Id.* at 25-27. Putting aside whether the restraints on Mr. Lyons were objectively serious, and reviewing the Complaint's allegations liberally, there are no allegations from which the Court reasonably could infer that Deputy Warden's state of mind was one of deliberate indifference. Therefore, regardless of whether the deprivation

---

[9] Although Mr. Lyons notes "excessive force" once in the description of his Eighth Amendment cause of action (ECF No. 34 at 28), there is no connection alleged between those assaults and the July 9, 2009 incident involving Deputy Warden Auger and Captain Duffy.

[10] During another incident when he was four-pointed, Mr. Lyons removed the mattress beneath him. (ECF No. 34 at 14.)

suffered was objectively serious, Mr. Lyons has failed to state a claim against Deputy Warden Auger. Because the aforementioned allegations against Deputy Warden Auger are the only allegations against him, defendant Deputy Warden Auger is DISMISSED.

Captain Duffy is alleged to have filmed Mr. Lyons, *id.* at 24; ordered his hands cuffed behind his back, *id.* at 25; ordered a helmet be taped to his head and laughed at him, *id.*; and refused to un-cuff him so he could use the toilet. *Id.* at 26. Given Mr. Lyons' preference to be on camera, *see, e.g., id.* at 7, the Court does not find that filming Mr. Lyons was a deprivation. Regarding the cuffs, the Court understands that someone who is four-pointed by definition has their hands cuffed. Here, Mr. Lyons initially was ordered four-pointed not by Captain Duffy, but by a doctor and a deputy warden. *Id.* at 24. Mr. Lyons alleges that he sat up to relieve pain and breathe better, and then Captain Duffy ordered his hands to be cuffed behind his back. *Id.* at 25. Viewing these allegations liberally, the Court does not find that relocating the position of the cuffs in response to Mr. Lyons' move from laying down to sitting up demonstrates that Captain Duffy was deliberately indifferent to Mr. Lyons. While it is unclear why the helmet was placed on Mr. Lyons' head,[11] there is no allegation that the helmet caused him pain and Mr. Lyons himself removed it with "two fingers." *Id.* at 25. Although Mr. Lyons was not initially permitted to use the toilet, he was provided with a diaper. *Id.* at 26.

What remains is the allegation that Captain Duffy laughed at Mr. Lyons when Mr. Lyons had a helmet on his head. *Id.* at 25. Construing the Complaint liberally as Mr. Lyons is *pro se*, the Court finds that laughter is not enough to draw a reasonable inference that Captain Duffy's state of mind was one of deliberate indifference. Accordingly, regardless of whether the

---

[11] On another occasion when Mr. Lyons was restrained, he banged his head. *Id.* at 14.

deprivation suffered by Mr. Lyons on July 9, 2009 was objectively serious, Mr. Lyons has failed to state a claim against Captain Duffy in connection with the events of that day.

Mr. Lyons also makes allegations regarding Captain Duffy in connection with an incident that occurred on May 1, 2009. (ECF No. 34 at 21.) On that day, Mr. Lyons alleges that an inmate urinated in his sneakers —sneakers provided to him via a prescription because of his bone spurs— and then the sneakers were declared a biohazard and destroyed. *Id.* Mr. Lyons contends that two days prior to this incident, after an inmate had spit in his sneakers, he asked a "block officer" to lock them up but Captain Duffy said, "The sneakers would not be locked up." *Id.*

Captain Duffy contends that even if he failed to act prudently by not locking up the sneakers, the loss of the sneakers is not serious enough to rise to a constitutional dimension. (ECF No. 41 at 10.) Captain Duffy also argues that Mr. Lyons fails to allege that he acted with a culpable state of mind. *Id.*

While prison officials have a duty under then Eighth Amendment to protect prisoners from violence by other inmates, "not every injury suffered by a prisoner at the hands of a fellow inmate gives rise to an Eighth Amendment claim." *Giroux v. Somerset Cnty.*, 178 F.3d 28, 32 (1st Cir. 1999). Here, the Court finds that the loss of sneakers in this instance is not "objectively, sufficiently serious" to give rise to an Eighth Amendment claim. *Burrell*, 307 F.3d at 8. In addition, this claim also fails because the only allegation in the Complaint that might tend toward the possibility of "deliberate indifference" is that the sneakers were spit in before Mr. Lyons asked that they be locked up. (ECF No. 34 at 21.) The Complaint contains no allegation that Captain Duffy knew that the shoes were at risk for being spit in or urinated in, so there is no allegation from which the Court could draw a reasonable inference that Captain Duffy knew of

"a substantial risk of serious harm." *Burrell*, 307 F.3d at 8. Therefore, both because the loss of the sneakers was not sufficiently serious and because there are no allegations indicating deliberate indifference, Mr. Lyons has failed to state an Eighth Amendment claim in connection with his sneakers against defendant Captain Duffy.

In addition, if Mr. Lyons intended to state a due process claim, he has failed to do so because the loss of his sneakers is not sufficient to implicate a liberty interest. *See Sandin*, 515 U.S. at 475-76, 486 (finding prisoner's punishment of 30 days in disciplinary segregation "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"). Further, even if Captain Duffy acted negligently by failing to secure the sneakers, "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (U.S. 1986).

The allegations regarding Captain Duffy in connection with the incidents on July 9, 2009 and May 1, 2009 are the only allegations against him. Mr. Lyons failed to state a claim against Captain Duffy in connection with either incident. Therefore, Captain Duffy is DISMISSED.

### C. **Defendant CO Duarte**

Mr. Lyons alleges that on November 7, 2008, he was told that he would be moved to a cell without a camera in an area called "F block."[12] (ECF No. 34 at 15.) He contends that when he arrived there, CO Duarte told him "[w]e are going to get you I promise." *Id.* Mr. Lyons contends that he said the following to CO Duarte: "get the nurse I'm suicidal or there will be blood everywhere." *Id.* at 16. Mr. Lyons alleges that CO Duarte laughed and did not get a

---

[12] Mr. Lyons alleges that between 2000 and 2004 when he was in F block, CO Duarte "repeatedly" beat him and assaulted him with bleach. *Id.* Mr. Lyons does not assert a claim in this action in connection with these earlier in time incidents.

nurse. *Id.* That afternoon, Mr. Lyons alleges that there was "blood on the cell floor sink walls door window" and that he was transported to "Stat Care for more stitches." *Id.* Mr. Lyons states that this was deliberate indifference by CO Duarte. *Id.*

CO Duarte argues for dismissal on the ground that Mr. Lyons did not actually allege that he was suicidal; instead, CO Duarte contends Mr. Lyons alleges that he *told* CO Duarte that he was suicidal. CO Duarte also contends that Mr. Lyons was attempting to manipulate his housing assignment so that he would be housed in cells he prefers, those with cameras. The Complaint supports CO Duarte's contention regarding Mr. Lyon's attempt to remain in a cell he prefers: "Plaintiff does indeed self-inflict so he can be kept in a safe block on camera at all times." *Id.* at 7.

Liberally reviewing the allegations against defendant CO Duarte, it appears that Mr. Lyons perceives CO Duarte's failure to get a nurse as a violation of his Eighth Amendment rights. "The failure of correctional officials to provide inmates with adequate medical care may offend the Eighth Amendment if their acts or omissions [are] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Leavitt v. Corr. Med. Servs., Inc.*, 645 F.3d 484, 497 (1st Cir. 2011) (internal quotation marks and citation omitted). Here, the circumstances of Mr. Lyons' request for medical care are somewhat unique: with his history of self-inflicting injuries as an attempt to manipulate his housing assignment, it is reasonable to infer that CO Duarte appreciated that Mr. Lyons would cause serious injury to himself. However, Mr. Lyons does not allege, for example, that he has a compulsion to mutilate himself and that he is not receiving medical treatment for that compulsion. *See De'Lonta v. Angelone*, 330 F.3d 630, 634-36 (4th Cir. 2003) (inmate states Eighth Amendment claim of denial of medical treatment

for "compulsive, repeated self-mutilation"). Nor does Mr. Lyons allege that he did not receive appropriate medical care for the injuries he inflicted on himself.

In his position, CO Duarte must "discriminate between serious risks of harm and feigned or imagined ones, which is not an easy task . . . ." *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004) (noting that "[s]ome prisoners are manipulative and cry 'wolf' in an effort to have a cell to themselves"). The Eighth Amendment "does not demand that guards perform this task flawlessly." *Id.* Liability arises "only when a guard is deliberately indifferent to a substantial risk of serious harm." *Id.* The Eighth Amendment analysis directs courts to focus on "the particular risk of harm faced by a prisoner due to the challenged deprivation of care." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003).

Mr. Lyons was not harmed, nor did he risk being harmed, because of CO Duarte's failure to summon a nurse in response to Mr. Lyons' demand. Rather, it was Mr. Lyons' decision to injure himself that caused harm and injury. When Mr. Lyons requested a nurse, he did not allege that he was in any pain, needed any medication, or was suffering from a particular condition requiring immediate medical treatment. CO Duarte's failure to promptly summon a nurse in response to Mr. Lyons' threat to harm himself therefore does not state an Eighth Amendment claim.

Turning to CO Duarte's threat to "get" Mr. Lyons and his laughter at Mr. Lyons, these allegations also fail to state a claim. Verbal threats by a correctional officer to a prisoner, without more, usually do not constitute cruel and unusual punishment. *See, e.g., Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997); *Siglar v. Hightower* 112 F.3d 191, 193 (5th Cir. 1997); *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983); *Shabazz v. Cole*, 69 F. Supp. 2d 177, 199 (D. Mass. 1999). The

laughter, even taken in combination with the threat and drawing all reasonable inferences in Mr. Lyons' favor, is not sufficient to allege deliberate indifference because it does not make it plausible that CO Duarte knew of and disregarded an "excessive risk" to Mr. Lyons' "health or safety." *Farmer v. Brennan*, 511 U.S. at 837. Because Mr. Lyons has failed to state a claim against him, CO Duarte is DISMISSED.

### D. Defendant Investigator Figueiredo

Mr. Lyons alleges that on September 5, 2008, Investigator Figueiredo took pictures of him while he was four-pointed and covered in feces and urine. (ECF No. 34 at 14.) Mr. Lyons does not allege that Investigator Figueiredo did anything else, nor does he allege that he was harmed by the taking of the pictures. Because there is no connection between Investigator Figueiredo's conduct and an alleged deprivation of a right, there is no claim stated against Investigator Figueiredo. *See Gutierrez-Rodriguez*, 882 F.2d at 559 (internal citation omitted) ("the conduct complained of must have been causally connected to the deprivation"). As this incident is the only allegation against him, and no claim is stated, Investigator Figueiredo is DISMISSED.

### E. Defendant CO Tomassi

Mr. Lyons' allegations regarding CO Tomassi pertain to CO Tomassi's presence on September 5, 2008 when Mr. Lyons was four-pointed, per the order of a nurse, in the DOC's Intake hospital upon his return from Rhode Island Hospital. (ECF No. 34 at 13-14.) According to Mr. Lyons, CO Tomassi told him "You will not eat[,] get your meds or use the bathroom and you will stay four pointed." *Id.* at 14. Later, CO Tomassi removed Mr. Lyons from the four-point restraints so Mr. Lyons could shower. *Id.* The quoted statement by CO Tomassi is the

only allegation against him; there are no allegations of harm regarding Mr. Lyons' removal from the restraints. *Id.* at 13-14.

As stated *supra*, verbal threats by a correctional officer to a prisoner, without more, usually do not constitute cruel and unusual punishment. *See, e.g., Shabazz*, 69 F. Supp. 2d at 199. Mr. Lyons does not allege that he was harmed by CO Tomassi's statement,[13] nor does he allege that CO Tomassi did anything to harm him. Further, Mr. Lyons does not allege that he was actually deprived of food or medicine. While the Court does not condone verbal abuse, the threatening remarks attributed to CO Tomassi are not actionable. As this is the only alleged wrong by CO Tomassi, and it fails to state a claim, defendant CO Tomassi is DISMISSED.

### F. Defendant Director Wall

Although Mr. Lyons names A.T. Wall, the director of the DOC, as a defendant, the Complaint contains no factual allegations regarding conduct by Director Wall. Director Wall seeks dismissal on the grounds that Mr. Lyons "fails to articulate any factual predicate" showing that Director Wall "had any knowledge or notice of the facts" alleged by Mr. Lyons. (ECF No. 41 at 15.)

"Although a superior officer cannot be held vicariously liable under 42 U.S.C. § 1983 on a *respondeat superior* theory, he may be found liable under section 1983 on the basis of his own acts or omissions." *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581-582 (1st Cir. 1994) (citations omitted). There are no allegations that Director Wall, for example, formulated a policy that led to the restraints being used on Mr. Lyons, or that he "tacitly approved of" Mr. Lyons not being able to call witnesses at a disciplinary hearing, or that he knew of "widespread abuse" of Mr. Lyons. *See id.* at 581-82; (ECF No. 34 at 30). Because there is no

---

[13] Mr. Lyons does allege that being four-pointed caused him pain, and he maneuvered his body to move the mattress out from under him and then banged his head. (ECF No. 34 at 14.)

alleged "causal link" between Director Wall and the incidents about which Mr. Lyons complains, there is no claim stated against Director Wall. *See Maldonado-Denis*, 23 F.3d at 582. Director Wall is DISMISSED.

### G. <u>Defendant Warden Weeden</u>

Mr. Lyons makes allegations about Warden Weeden in connection with three incidents. Mr. Lyons alleges that: (i) on January 25, 2008, he told Warden Weeden that he would harm himself if taken off camera, he was ordered off camera, he cut himself, and he needed stitches, (ECF No. 34 at 8); (ii) on November 7, 2008, he was told he was being moved to another cell and was cuffed — he claims that Warden Weeden "did not expect [him] to comply and be cuffed," *id.* at 15, and that Warden Weeden was deliberately indifferent, *id.* at 16; and (iii) on February 20, 2009,[14] he was told by a correctional officer that he was being transferred from a cell with a camera to a cell without a camera "per orders of defendant Warden Weeden." *Id.* at 18. Warden Weeden seeks dismissal because there are neither allegations that he was involved with the incidents, nor allegations necessary for supervisory liability. (ECF No. 141 at 13-15.) Further, he contends that Mr. Lyons has failed to allege that he needs a specialized type of housing, such as a cell with a camera. *Id.* at 14.

Regarding the January 25th incident, Mr. Lyons alleges that he told Warden Weeden that he would harm himself if he was moved to a cell without a camera and he was moved to a cell without a camera. (ECF No. 34 at 8.) Mr. Lyons does not allege that he was harmed during that move, or that he was harmed by an object or individual in the new cell. Further, he does not allege that he was denied medical care for the cut that he made on his own wrist. Not only does

---

[14] While the Complaint provides the date as "February 20th 2008," the Court infers that Mr. Lyons meant 2009 because the alleged incidents, save for this one, appear in chronological order. The year during which this incident occurs, however, is not relevant to the analysis of whether the Complaint states a claim against Warden Weeden.

Mr. Lyons not have a constitutional right to choose his own cell, *see Lyon v. Farrier*, 727 F.2d 766, 768 (8th Cir.1984), Mr. Lyons does not allege that it was Warden Weeden who ordered him moved. The allegations of January 25th consequently fail to state a claim against Warden Weeden.

The November 7th incident does not allege conduct by Warden Weeden that caused harm to Mr. Lyons; it states that Warden Weeden did not "expect" Mr. Lyons to comply. (ECF No. 34 at 15.) Further, the bald assertion of deliberate indifference is a legal conclusion that the Court does not credit at the motion to dismiss stage. *See id.* at 16; *Aulson*, 83 F.3d at 3. In addition, the Complaint contains no factual allegations supporting a finding of deliberate indifference by Warden Weeden. Warden Weeden's alleged conduct that day, therefore, also fails to state a claim.

Regarding the allegations on February 20th, Mr. Lyons states that Warden Weeden ordered his transfer to another cell. (ECF No. 34 at 18.) Mr. Lyons does not allege that he suffered any harm during the transfer or while in the new cell; rather, the harm inflicted on Mr. Lyons was caused by Mr. Lyons. *Id.* As stated *supra*, there are no allegations by Mr. Lyons that he self-inflicts injuries because of a medical condition for which he is not receiving treatment; rather, he chooses to self-inflict as a means of attempting to avoid placement in cells without cameras. *Id.* at 7. Further, it appears that after Mr. Lyons injured himself, he received appropriate medical care — ten stiches. *Id.* at 18. Also as noted *supra*, Mr. Lyons does not have the right to select his cell. *See, e.g., Young v. Wall*, C.A. No. 03-220, 2003 WL 22849456, at *2 (D.R.I. Nov. 24, 2003) (prisoners do not "enjoy a choice of any particular cell") (dismissal of claim affirmed by *Young v. Wall*, 359 F. Supp. 2d 84, 92 (D.R.I. Mar. 5, 2005)). The allegation

that Warden Weeden directed Mr. Lyons to be moved to another cell on February 20th is therefore not sufficient to state a claim.

Because the Complaint fails to state a claim against Warden Weeden in connection with the three aforementioned incidents, Warden Weeden is DISMISSED.

## V. CONCLUSION

Because Mr. Lyons has failed to state a claim against the nine defendants seeking dismissal, the Motion to Dismiss (ECF No. 141) is GRANTED. The following defendants are DISMISSED from this action: (i) CO Allard; (ii) Deputy Warden Auger; (iii) CO Duarte; (iv) Captain Duffy; (v) Investigator Figueiredo; (vi) CO Lamontagne; (vii) CO Tomassi; (viii) Director Wall; and (ix) Warden Weeden.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge
August 1, 2012