UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

OLIVER LYONS,                    )
    Plaintiff,                   )
                         )
       v.                       )          C.A. No. 08-498-M
                         )
ASHBEL T. WALL, II, et al.,       )
    Defendants.                  )

**MEMORANDUM AND ORDER**

JOHN J. McCONNELL, JR., United States District Judge.

       Oliver Lyons, a prisoner at the Adult Correctional Institution (ACI),[1] filed suit pro se

under 42 U.S.C. § 1983 alleging violations of his Eighth Amendment rights and his Fourteenth

Amendment Due Process rights.   In the operative Second Amended Complaint (Complaint),

Mr. Lyons alleges that during his incarceration at the ACI, his constitutional rights were violated

by numerous individuals affiliated with the ACI, including its director,[2] several correctional

officers (COs), and two doctors.   (ECF No. 34.)   The Complaint is organized into sixteen

numbered incidents, and those incidents occurred between January 25, 2008 and July 9, 2009.

*Id.*

       This matter is before the Court on five motions for summary judgment, three filed by

various defendants and two filed by Mr. Lyons.   The motions filed by defendants Dr. Friedman

and Dr. Matkovic (the Doctor Defendants) raise the same issues and will be analyzed together.

(ECF Nos. 105, 107.)   Another motion is pressed by the following seven defendants (hereinafter,

the ACI Defendants):   (i) Captain Aceto; (ii) Investigator Cabral; (iii) Lieutenant Doyle; (iv) CO

---

[1]   The Rhode Island Department of Corrections' (RI DOC) facilities are known collectively as
the ACI.

[2]   The ACI's director, A.T. Wall, II, was dismissed earlier this year.   (ECF No. 371.)

LeDuc; (v) Captain McDonough; (vi) Lieutenant Sayles; and (vii) CO Simpson. (ECF No. 143.)[3] Two motions were filed by Mr. Lyons. (ECF Nos. 246, 286.)

In several submissions related to the pending summary judgment motions, Mr. Lyons complained that he lacked access to his own psychiatric records. On July 17, 2012, the Court granted Mr. Lyons' Motion to Compel his psychiatric records. (ECF No. 363.) The Court ordered Defendants to provide Mr. Lyons with all psychiatric records responsive to his request. *Id.* Mr. Lyons was permitted to supplement his objections to the defendants' pending summary judgment motions (ECF Nos. 105, 107, 143) and to supplement his own summary judgment motions (ECF Nos. 246, 286). *Id.* Mr. Lyons submitted supplemental materials in connection with his oppositions to the Doctor Defendants' motions for summary judgment. (ECF Nos. 372, 373.)

I.   STANDARD OF REVIEW

Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990) (quoting Fed. R. Civ. P. 56 advisory committee's note). Summary judgment should be granted if the movant shows, based on materials in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a), (c). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008) (citation omitted). "A fact is material if it has the potential of determining the outcome of the litigation." *Maymi v. Puerto Rico Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008) (citation omitted). "Otherwise stated, [the Court's] task is to

---

[3] Defendant Johanson was included in the motion but has been previously dismissed. (ECF No. 246 at 3; 7/20/2011 Text Order.)

determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Zambrana-Marrero v. Suarez-Cruz*, 172 F.3d 122, 125 (1st Cir. 1999) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

When deciding a motion for summary judgment, the Court reviews the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *Cadle Co. v. Hayes*, 116 F.3d 957, 959 (1st Cir. 1997). The Court's role is not to make credibility determinations or weigh evidence. *Anderson*, 477 U.S. at 255.

Normally, the nonmoving party may not rely on the allegations in the complaint to oppose a properly supported summary judgment motion. *See Ruiz-Rosa v. Rullán*, 485 F.3d 150, 156 (1st Cir. 2007). However, in the summary judgment context, a "verified complaint" that attests to the truth of the allegations therein "ought to be treated as the functional equivalent of an affidavit to the extent that it satisfies the standards explicated in Rule 56(e). . . ." *Sheinkopf v. Stone*, 927 F.2d 1259, 1262 (1st Cir. 1991). Here, the Court considers Mr. Lyons' Complaint to be verified based on Mr. Lyons' verification. (ECF No. 34 at 33.) In evaluating the pending motions, the Court therefore may consider as the functional equivalent of an affidavit any of the Complaint's factual allegations based on Mr. Lyons' personal knowledge that would be admissible in evidence, even if self-serving. *See Sheinkopf*, 927 F.2d at 1262; *Velázquez–García v. Horizon Lines of Puerto Rico, Inc.*, 473 F.3d 11, 18 (1st Cir. 2007); *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 53 (1st Cir. 2000). Conclusory allegations in the Complaint, however, "do not pass muster, and hence, must be disregarded." *Sheinkopf*, 927 F.2d at 1262.

Furthermore, because Mr. Lyons is pro se, the Court holds the Complaint to a less stringent standard than if drafted by an attorney. *Dutil v. Murphy*, 550 F.3d 154, 158 (1st Cir. 2008). A pro se complaint is "read liberally." *Pavilonis v. King*, 626 F.2d 1075, 1078 (1st Cir. 1980) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). Nevertheless, the Court's "duty to be 'less stringent' with pro se complaints does not require [the Court] to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (quoting *Hurney v. Carver*, 602 F.2d 993, 995 (1st Cir. 1979)).

II.   CONSTITUTIONAL CLAIMS

Mr. Lyons filed suit under 42 U.S.C. § 1983, a statute providing "remedies for deprivations of rights established elsewhere." *City of Okla. v. Tuttle*, 471 U.S. 808, 816 (1985). A constitutional claim under § 1983 must allege that a person acting under color of state law[4] committed conduct that deprived the plaintiff of a constitutional right. *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir. 1989) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (*overruled on other grounds*)). A plaintiff "must show that the defendants' conduct was the cause in fact of the alleged deprivation." *Rodriguez-Cirilo v. Garcia*, 115 F.3d 50, 52 (1st Cir. 1997). "As an additional corollary, only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable." *Cepero-Rivera v. Fagundo*, 414 F.3d 124, 129 (1st Cir. 2005). Here, Mr. Lyons seeks to use § 1983 to remedy alleged violations of his Eighth Amendment rights and his Fourteenth Amendment Due Process rights.

A.   Eighth Amendment

The Eighth Amendment protects prisoners against the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. Mr. Lyons' first cause of action alleges that the

---

[4] Here, none of the defendants seeking summary judgment disputes that they were acting under color of state law.

4

defendants violated his Eighth Amendment rights.[5] (ECF No. 34 at 28-30.) "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones; accordingly, it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Leavitt v. Corr. Med. Servs., Inc.*, 645 F.3d 484, 497 (1st Cir. 2011) (internal quotation marks and citations omitted). The Supreme Court has "indicated that the Eighth Amendment prevents only conditions of confinement that involve the wanton and unnecessary infliction of pain, that deny basic human needs or that are grossly disproportionate to the severity of the crime warranting imprisonment." *Santana v. Collazo*, 714 F.2d 1172, 1179 (1st Cir. 1983) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

To survive a summary judgment motion, Mr. Lyons' Eighth Amendment violation must satisfy two requirements. *Leavitt,* 645 F.3d at 497. There is an objective requirement: he must demonstrate "that the deprivation alleged was 'objectively, sufficiently serious.'" *Id.* (quoting *Burrell v. Hampshire Cnty.,* 307 F.3d 1, 8 (1st Cir. 2002)). And there is a subjective requirement: he must establish "that prison officials possessed a sufficiently culpable state of mind, namely one of 'deliberate indifference' to [his] health or safety." *Burrell,* 307 F.3d at 8 (citing *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)). "In order to be found 'deliberately indifferent,' prison officials must be shown to have been *subjectively* aware of a condition requiring their intervention." *Mahan v. Plymouth Cnty. House of Corrs.*, 64 F.3d 14, 18 (1st Cir. 1995) (citing *Farmer,* 511 U.S. at 840-44). The First Circuit has explained that the requisite mental state could "aptly be described as 'recklessness,' . . . not in the tort-law sense but in the

---

[5] The Eighth Amendment "is applicable to the States by reason of the Due Process Clause of the Fourteenth Amendment." *Robinson v. California*, 370 U.S. 660, 675 (1962).

appreciably stricter criminal-law sense, requiring actual knowledge of impending harm, easily preventable." *DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991) (citing *Wilson v. Seiter*, 501 U.S. 294, 298-303 (1991)).

The contours of the aforementioned two-part analysis differ depending on the particular Eighth Amendment claim at issue. As set forth below, for example, the analysis of an Eighth Amendment claim of inadequate health care differs somewhat from the analysis of an Eighth Amendment claim of excessive force.

B.    Fourteenth Amendment

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The second cause of action in the Complaint alleges that defendants violated Mr. Lyons' Fourteenth Amendment Due Process rights. (ECF No. 34 at 30-31.) Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Rodi v. Ventetuolo*, 941 F.2d 22, 24 (1st Cir. 1991) (quoting *Kentucky Dept. of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)).

To state a Fourteenth Amendment due process claim, an inmate must demonstrate a violation of a life, liberty or property interest. *See Wilkinson*, 545 U.S. at 221. The United States Supreme Court has explained that prisoners' liberty interests are "generally limited to freedom from restraint" imposing "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995). For example, in

*Sandin*, the Supreme Court found that a prisoner's punishment of 30 days in disciplinary segregation "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* at 486.

## III.   DOCTOR DEFENDANTS

In support of their summary judgment motions, the Doctor Defendants submitted Statements of Undisputed Facts (SUFs) (ECF Nos. 106, 108); their answers to Mr. Lyons' Complaint (ECF Nos. 105-4, 107-1 Ex. B.); an expert witness disclosure and report by Pamela Cantor, Ph.D. (ECF Nos. 105-6, 107-1 Ex. C); and affidavits of their own. (ECF Nos. 105-7, 107-1 Ex. D.) In addition, Dr. Matkovic submitted an expert witness disclosure stating that he may testify as an expert. (ECF No. 107-1 Ex. F.) Mr. Lyons objected to both motions, initially filing two oppositions and a SUF. (ECF Nos. 109, 110, 111.)

In response to Mr. Lyons' papers, Dr. Friedman filed a supplemental memorandum. (ECF No. 132.) Mr. Lyons objected to the supplemental memorandum (ECF No. 140) and filed a supplemental objection to Dr. Friedman's Motion for Summary Judgment. (ECF No. 245.) Then the Doctor Defendants filed oppositions to Mr. Lyons' supplemental objection. (ECF Nos. 249, 250.) Next, Mr. Lyons sent a letter to Magistrate Judge Martin complaining that the Doctor Defendants' summary judgment motions are predicated on an expert's review of psychiatric notes about him. (ECF No. 277.) Then Mr. Lyons filed additional objections to the Doctor Defendants' Motions for Summary Judgment. (ECF Nos. 280, 281.) Finally, Mr. Lyons filed supplemental objections and medical records. (ECF Nos. 372, 373.)

### A.   Background

During the time period of the alleged incidents, Dr. Friedman served as Director of Behavioral Health and was a treating psychologist at the ACI, while Dr. Matkovic was a staff

psychiatrist at the ACI. (ECF Nos. 105-7, 107-1 Ex. D.) Dr. Friedman is mentioned in connection with the first and sixteenth incidents in the Complaint, while Dr. Matkovic is noted in connection with the tenth incident.[6] (ECF No. 34 at 8, 17, 24.)

The first incident occurred on January 25, 2008: Mr. Lyons contends that he informed Dr. Friedman that he would harm himself if he was moved off camera; Mr. Lyons was moved off camera; and Mr. Lyons harmed himself by cutting his wrist. *Id.* at 8. This injury needed nine stitches. *Id.* The tenth incident occurred on January 12, 2009: Mr. Lyons told Dr. Matkovic that if he was taken off camera that he would harm himself; Mr. Lyons was taken off camera; and Mr. Lyons self-inflicted a serious cut on his wrist. *Id.* at 17. The sixteenth incident occurred on or about July 9, 2009 and involved Mr. Lyons being four-pointed,[7] per Dr. Friedman and another defendant. *Id.* at 23-24. Mr. Lyons alleges that he spent most of the day cuffed to a steel slab, without a mattress, without access to a bathroom, and he experienced incredible pain. *Id.* at 24-27.

B.   Analysis

Mr. Lyons seeks to use § 1983 to remedy the alleged violations of his Eighth Amendment rights by the Doctor Defendants in connection with two incidents where he harmed himself after being moved off camera and one incident where he was four pointed.[8] The Doctor Defendants

---

[6] In connection with the eleventh incident, the Complaint notes that Mr. Lyons was in a cell with a camera due to Dr. Matkovic, prior to being moved to a cell without a camera. (ECF No. 34 at 18.) The Court views that inclusion of Dr. Matkovic as contextual information, not as an actionable allegation.

[7] One court explained that a four-point restraint has a person's arms and legs handcuffed to a bed, with the person's arms restrained above the head. *Efaw v. Williams*, 473 F.3d 1038, 1039 (9th Cir. 2007). Another court stated that "[p]lacing an inmate under four-point restraints involves shackling the inmate's hands and feet to the four corners of his bed." *Grinter v. Knight*, 532 F.3d 567, 571 n.2 (6th Cir. 2008).

[8] If Mr. Lyons had intended to attempt to allege a due process claim in connection with his transfer to a cell without a camera or a cell with restraints, such claim would fail because "[t]he

maintain that they are entitled to judgment as a matter of law and Mr. Lyons fails to establish a genuine issue of material fact. The Doctor Defendants offer a report from an expert clinical psychologist who opined that the care they provided to Mr. Lyons met or exceeded the applicable standard of care. The Doctor Defendants contrast this evidence with the complete lack of evidence presented by Mr. Lyons indicating that they were deliberately indifferent to his medical or mental health needs.

"To succeed on an Eighth Amendment claim based on inadequate or delayed medical care, a plaintiff must satisfy both a subjective and objective inquiry: he must show first, that prison officials possessed a sufficiently culpable state of mind, namely one of deliberate indifference to an inmate's health or safety, and second, that the deprivation alleged was objectively, sufficiently serious." *Leavitt*, 645 F.3d at 497 (internal quotation marks and citations omitted). Regarding the subjective inquiry, "to establish deliberate indifference, the complainant must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain." *Braga v. Hodgson*, 605 F.3d 58, 61 (1st Cir. 2010) (quoting *DesRosiers*, 949 F.2d at 19). "In order to be found 'deliberately indifferent,' prison officials must be shown to have been *subjectively* aware of a condition requiring their intervention." *Mahan*, 64 F.3d at 18 (citing *Farmer*, 511 U.S. at 840-44.) However, "inadvertent failures to provide medical care, even if negligent, do not sink to the level of deliberate indifference." *DesRosiers*, 949 F.2d at 19 (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Within the context of a prisoner's medical needs, "[d]eliberate indifference thus defines a narrow band of conduct . . . ." *Feeney v. Corr. Med. Servs., Inc.*, 464 F.3d 158, 162 (1st Cir. 2006) (internal quotation marks omitted).

---

Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Matthews v. Wiley*, 744 F. Supp. 2d 1159, 1170 (D.Colo. 2010) (citing *Wilkinson*, 545 U.S. at 221)).

Regarding the objective inquiry, a "serious medical need" is defined as "one 'that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Mahan*, 64 F.3d at 18 (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)).

Here, the Doctor Defendants contend that there is no evidence of deliberate indifference and they present evidence, through their own affidavits and the expert report of Dr. Cantor, showing that the care they provided to Mr. Lyons was appropriate and met or exceeded the applicable standards of care. Specifically, Dr. Cantor's expert report provides her opinion that "nothing Dr. Friedman did or failed to do was the cause of any alleged injury"; Mr. Lyons inflicted injuries to himself in an attempt to be put on camera when his requests were not honored; and "Dr. Friedman and his staff performed well within the expected standard of care for professionals in their positions and that Mr. Lyons received attention and treatment well within the expected standard of care." (ECF No. 105-6 at 4.) In Dr. Friedman's affidavit, he states that he provided mental health care to Mr. Lyons; he "generally oversaw the mental health care provided to" Mr. Lyons; and the care he provided "was appropriate and met all applicable standards of care." (ECF No. 105-7.) In Dr. Matkovic's affidavit, he states that in his capacity as a psychiatrist at the ACI he provided some mental health care to Mr. Lyons and is prepared to testify that the care he provided "was appropriate and met all applicable standards of care." (ECF No. 107-1 Ex. D.) In Dr. Matkovic's expert witness disclosure, it states that he is expected to testify that "all aspects of [Mr. Lyons'] care complied with the applicable standard(s) of care and did not constitute a significant factor in causing any injury to Mr. Lyons." (ECF No. 107-1 Ex. F at 2.) The Doctor Defendants contend that the aforementioned evidence demonstrates their entitlement to judgment as a matter of law. Moreover, they contend that Mr. Lyons fails to raise

a genuine issue of material fact as to their conduct because he presents no evidence to support his allegations.[9]

In contrast to the evidence presented by the Doctor Defendants, Mr. Lyons submitted Dr. Friedman's Answers to his Interrogatories (the Answers) (ECF No. 281-1) and several pages of medical records. (ECF Nos. 372-1 and 373-1.) Mr. Lyons contends the Answers show that Dr. Friedman had not reviewed Mr. Lyons' medical records. (ECF No. 281 at 3.) In the Answers, Dr. Friedman states that Mr. Lyons "has been treated for, or offered treatment for, mental illness and personality disorder and has been treated when he appears suicidal." (ECF No. 281-1 at 1.) In addition, in several answers to questions about particular incidents he did not witness, Dr. Friedman states that "[t]he only knowledge I would have of this incident would be from [Mr. Lyons'] medical records." *Id.* at 2, 3. Further, also in response to several questions regarding incidents he did not witness, Dr. Friedman states, "I did not personally treat [Mr. Lyons] with respect to this incident but am aware that he was being treated by the Mental Health Staff." *Id.* at 3, 4. The Answers do not provide evidence that Dr. Friedman did not review Mr. Lyons' medical records, nor do the Answers raise a genuine issue of material fact in connection with Mr. Lyons' Eighth Amendment claims against either Dr. Friedman or Dr. Matkovic.

The supplemental medical records submitted by Mr. Lyons show that Mr. Lyons received medical care from a variety of providers, including Dr. Matkovic; that Mr. Lyons hurts himself when he is not housed in a cell with a camera; and that Mr. Lyons did not have the intent to die. (ECF Nos. 372-1, 373-1.) Regarding Dr. Friedman, Mr. Lyons makes allegations about events in

---

[9]   The Doctor Defendants argue that the Court should not consider the allegations in the Complaint. As discussed *supra*, the Court disagrees and considers the verified Complaint's allegations based on Mr. Lyons' personal knowledge that would be admissible in evidence.

2007, which precedes the incidents at issue in the Complaint, and he also provides a February 2008 medical record, signed by another doctor, indicating that Mr. Lyons complained he did not have his "legal work" and stated "If I come off that camera, I'll hurt myself." (ECF Nos. 372, 372-1.) Regarding Dr. Matkovic, Mr. Lyons refers to January and February 2009 incidents when he cut his wrists and argues that Dr. Matkovic's failure to keep him in a camera cell to prevent him from cutting his wrists is deliberate indifference.[10] (ECF No. 373 at 4-7.) Mr. Lyons provides several medical records indicating that he was cutting himself because he wanted to be on camera or because he was not getting his legal work. (ECF Nos. 373-1 at 2, 3, 4, 5.) Other records indicate that Mr. Lyons was not suicidal, *id.* at 2, 5, 6, 8, 9; he smeared feces in his cell, *id.* at 10; and he was prescribed a variety of medications. *Id.* at 11-22. None of the records contains evidence of deliberate indifference by either Dr. Friedman or Dr. Matkovic.

Mr. Lyons has not disclosed an expert witness. (*See, e.g.*, ECF No. 109 at 2-4.) He asserts that as a pro se prisoner, he is unable to afford one. *Id.* While the Court is mindful of its discretion to appoint an expert for Mr. Lyons, the Court finds that Mr. Lyons has not made a sufficient showing to warrant the appointment of an expert. *See* Fed. R. Evid. 706. Mr. Lyons' "dilemma in being unable to proceed in this damage suit because of the inability to pay for expert witnesses does not differ from that of nonprisoner claimants who face similar problems." *Boring v. Kozakiewicz*, 833 F.2d 468, 474 (3rd Cir. 1987).

In addition to reviewing the materials submitted by Mr. Lyons, the Court reviewed the Complaint for admissible statements indicating that the Doctor Defendants were deliberately indifferent to Mr. Lyons' serious medical needs. Focusing first on the two incidents involving

---

[10]  Although Mr. Lyons' supplemental filing makes allegations about Dr. Matkovic in connection with incidents occurring in 2008 and 2010, the Complaint either does not contain those incidents or contains no allegations about Dr. Matkovic in connection with those incidents. (ECF No. 373 at 2-3, 8-10.) The Court will not consider these new allegations at this late stage of the litigation.

Mr. Lyons's movement to a cell without a camera and his self-infliction of injuries (the first and tenth incidents), Mr. Lyons contends that on January 25, 2008 he told Dr. Friedman that he would harm himself if he was moved to a cell without a camera, and, on January 12, 2009, he told Dr. Matkovic he would harm himself if he was moved to a cell without a camera. (ECF No. 34 at 8, 17.) In both incidents, Mr. Lyons was moved to a cell without a camera and he harmed himself. *Id.* Taking these allegations in the light most favorable to Mr. Lyons, it appears Mr. Lyons contends that the Doctor Defendants' refusal to honor his preference for a cell with a camera constitutes deliberate indifference and violates his constitutional rights. Mr. Lyons provides no authority for this proposition and he does not have a constitutional right to choose his cell. *See, e.g., Lyon v. Farrier*, 727 F.2d 766, 768-69 (8th Cir.1984) (prisoners do not have the right to choose their cells).

Mr. Lyons does not demonstrate, or even allege, that the Doctor Defendants' conduct actually caused him to self-inflict injury. *See Rodriguez-Cirilo v. Garcia*, 115 F.3d 50, 52 (1st Cir. 1997) (in § 1983 action, plaintiff "must show that the defendants' conduct was the cause in fact of the alleged deprivation). Mr. Lyons does not allege that he was denied medical care, nor does he allege that the medical care he received was inadequate. *See, e.g., Vann v. Vandenbrook*, 596 F. Supp. 2d 1238, 1243 (W.D.Wis. 2009) (allegation that nurse failed to treat 133 bleeding wounds states claim that nurse was deliberately indifferent to serious medical need); *Miranda v. Munoz*, 770 F.2d 255, 259 (1st Cir. 1985) (upholding district court's decision not to grant judgment n.o.v. where "[i]t could be found that defendants ignored a clear warning that the medical treatment they provided for [the detainee] was inadequate, allowing him to deteriorate beyond recovery"). Nor does the Complaint contain any allegations from which the Court could infer that Dr. Matkovic or Dr. Friedman was deliberately indifferent to Mr. Lyons' medical

needs. In sum, Mr. Lyons presents no evidence —in the Complaint or elsewhere— from which the Court can draw an inference that the Doctor Defendants were deliberately indifferent in connection with the first and tenth incidents. *See, e.g., Torraco v. Maloney*, 923 F.2d 231, 235 (1st Cir. 1991) (affirming summary judgment where there is "no evidence supporting a finding that defendants were deliberately indifferent").

Turning to the remaining allegation against Dr. Friedman, Mr. Lyons alleges that on July 9, 2009 (the sixteenth incident), he was four-pointed "per" Dr. Friedman and another defendant to "solid steel without any mattress under [him] and all being filmed." (ECF No. 34 at 23-24.) Mr. Lyons does not explain how he knew that he was four-pointed "per" Dr. Friedman, and he makes no other allegations regarding Dr. Friedman in connection with this incident. *Id.* at 23-27. Moreover, the use of four-point restraints is not a *per se* constitutional violation. *See Ferola v. Moran*, 622 F. Supp. 814, 820 (D.R.I. 1985). Not only does the aforementioned allegation about Dr. Friedman fail to contain admissible evidence from which the Court could infer deliberate indifference, but, in the Answers provided to the Court by Mr. Lyons, Dr. Friedman states that he "would not be involved in four pointing an inmate, as [Dr. Friedman is] not involved in the ordering of physical restraints, which is a function of the Custody Staff." (ECF No. 281-1 at 6.)[11]

---

[11] Although the Complaint contains no claim or cause of action for negligence, the Doctor Defendants assert that Mr. Lyons alleges they are negligent in his "answers" to Dr. Friedman's Answer. (ECF Nos. 105-1 at 3, 105-3, 107-1 at 4.) To succeed on a medical negligence claim, Mr. Lyons must establish a standard of care and a deviation from that standard of care. *Boccasile v. Cajun Music Ltd.*, 694 A.2d 686, 689-90 (R.I. 1997). "In that regard, 'expert testimony is required to establish deviation from the standard of care when the lack of care is not so evident as to be obvious to a lay person.'" *Id.* at 690 (quoting *Richardson v. Fuchs*, 523 A.2d 445, 450 (R.I. 1987)). As discussed above, Mr. Lyons does not have an expert. Therefore, if there is a negligence claim asserted against either of the Doctor Defendants, it fails because the lack of care here "is not so evident as to be obvious to a lay person" and Mr. Lyons has not presented the requisite expert testimony.

Even when applying the liberal standards appropriate in the case of a pro se plaintiff, and drawing all inferences in Mr. Lyons' favor, the evidence presented by Mr. Lyons "falls far short of compelling a finding that [Mr. Lyons'] treatment was so grossly inadequate as to constitute a knowing denial of proper medical care." *DesRosiers v. Moran*, 949 F.2d 15, 20 (1st Cir. 1991) Mr. Lyons offers nothing demonstrating that the Doctor Defendants "had a culpable state of mind and intended wantonly to inflict pain," *id.* at 19, nor is there anything in the record to show a "reasonable possibility of a jury finding that the [Doctor Defendants were] deliberately indifferent." *Ramos v. Patnaude*, 640 F.3d 485, 489 (1st Cir. 2011).  Based on the record before the Court, no reasonable fact-finder could conclude that either Dr. Matkovic or Dr. Friedman acted with deliberate indifference.  Because Mr. Lyons has failed to raise a genuine issue of material fact with respect to deliberate indifference, the Court need not evaluate the whether Mr. Lyons' medical needs were objectively serious.

### C.   Conclusion

For all of the foregoing reasons, both Dr. Friedman's Motion for Summary Judgment (ECF No.105) and Dr. Matkovic's Motion for Summary Judgment (ECF No. 107) are GRANTED.  Dr. Matkovic and Dr. Friedman are DISMISSED.

### IV.   ACI DEFENDANTS

The ACI Defendants' summary judgment motion is accompanied by numerous affidavits, reports, forms, a transcript excerpt, and a SUF.  (ECF Nos. 143, 144, 152.)  In response, Mr. Lyons filed objections, answers to the ACI Defendants' SUF, several of his own affidavits, photographs, reports, and medical records.[12]  (ECF Nos. 149, 156, Exs. to 156, 157, Exs. to

---

[12]  Mr. Lyons also sent a letter to the Court wherein he argues that this motion and another motion were filed out of time.  (ECF No. 150.)  Mr. Lyons' argument is without merit as the

157.)[13]

The ACI Defendants seek dismissal on various grounds, some contending that their alleged conduct did not deprive Mr. Lyons of his constitutional rights and others claiming that Mr. Lyons has no support for his allegations. The Court focuses first on the Eighth Amendment claims, and then moves on to the Fourteenth Amendment Due Process claims.

### A.   Eighth Amendment Claims

Mr. Lyons' Eighth Amendment claims against the ACI Defendants fall into two categories, some involve the ACI Defendants' use of excessive force while others involve Mr. Lyons' self-inflicted injuries.

### 1.   Excessive Force

Mr. Lyons alleges that various ACI Defendants used excessive force against him during incidents occurring on three days in 2008: August 15, August 16, and September 4. On those dates, Mr. Lyons contends that he was grabbed by the hair on his back, slammed into doors, and gassed.

In *Hudson v. McMillian*, the United States Supreme Court held "that whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. 1, 6-7 (1992); *see also Skinner v. Cunningham*, 430 F.3d 483, 488 (1st Cir. 2005). "In determining whether the use of force was wanton and unnecessary, it [is] proper

---

dispositive motion deadline was extended to June 29, 2010 (ECF No. 147) and the ACI Defendants' motion was filed on June 11, 2010. (ECF No. 143.)

[13] The exhibits to ECF Nos. 156 and 157 were not scanned into ECF; therefore, the Court refers to them based on the handwritten exhibit numbers appearing on either the front or back of the documents.

to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'"  *Id.* at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).   Moreover, this Court is mindful that prison officials are accorded deference when executing practices that preserve order and maintain security.  *Whitley*, 475 U.S. at 321-22 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

### August 15, 2008

The second incident in the Complaint occurred on August 15, 2008 and involves allegations about Lt. Sayles and CO Simpson.  (ECF No. 34 at 8-9.)  Mr. Lyons maintains that he was on camera, Lt. Sayles ordered him to "cuff up," and he complied with that order.  *Id.* at 8. Then CO Simpson said, "This will be easy with all this hair on his back," grabbed Mr. Lyons by the hair on his back, and proceeded to lift him up and down, into walls and cell doors, and repeatedly slammed him into a shower door, injuring and bruising him.  *Id.* at 8-9.  According to the ACI Defendants, Mr. Lyons needed to be escorted from his cell to the shower because he had smeared feces all over his cell walls.  (ECF Nos. 143 at 10, 144 at 1.)  Mr. Lyons alleges that he was examined by a doctor and his injuries were documented by a nurse.  (ECF No. 34 at 9.)

Lt. Sayles seeks summary judgment in connection with the allegations of August 15, 2008 because he is not alleged to have been involved with any activity causing any harm to Mr. Lyons and further cannot be held liable as a supervisor under § 1983.  (ECF No. 143 at 5-6.) In his opposition, Mr. Lyons contends that Lt. Sayles was "in command and watching the entire time" and did not intervene when other COs assaulted him.  (ECF No. 156 at 1.)

Regarding Lt. Sayles cuffing Mr. Lyons, the Complaint contains no allegations of harm to Mr. Lyons, and Mr. Lyons presents no evidence that he was harmed.  Regarding Lt. Sayles'

role as a superior officer, the Court looks to the Complaint as well as the other evidence submitted, but it does not credit factual allegations contained solely within Mr. Lyons' objection. *See Posadas de Puerto Rico, Inc. v. Radin*, 856 F.2d 399, 401-02 n.1 (1st Cir. 1988). There is no allegation in the Complaint or evidence supporting Mr. Lyons' contention that Lt. Sayles observed or was present when Mr. Lyons was assaulted.[14] Moreover, Lt. Sayles cannot be held vicariously liable as a supervisor under § 1983. *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994). Therefore, as to the August 15, 2008 incident, Lt. Sayles is entitled to summary judgment.

CO Simpson contends that he is entitled to summary judgment because he used a passive escort and Mr. Lyons' injuries were self-inflicted. (ECF No. 143 at 9-10.) He states that Mr. Lyons resisted and made abrupt movements, coming into contact with cell walls or doors. *Id.* at 10. In support of his motion, CO Simpson submitted his own report and affidavit, as well as reports and affidavits from two other COs, all indicating that CO Simpson used a "passive escort technique to transport Mr. Lyons. (ECF Nos. 143-7, 143-8, 143-9.) This evidence further indicates that Mr. Lyons made abrupt movements, such as stopping suddenly and pulling away, during the escort, causing CO Simpson to briefly lose his balance. *Id.* CO Simpson argues that guards are permitted to use some force when transferring prisoners, and even if Mr. Lyons' allegation regarding his injury is true, it is "de minimis and fails to rise to a constitutional dimension." (ECF No. 143 at 10.)[15]

---

[14] According to a RI DOC Report of Force Used, it appears that Lt. Sayles was not present when force was used as he arrived a few seconds after the incident. (ECF No. 143-9 at 3.)

[15] The extent of Mr. Lyons' injuries is only one factor under the *Whitley* approach —the Court also looks to "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

In response, Mr. Lyons points out that he did not receive a disciplinary infraction for self-injurious behavior on August 15, 2008,[16] and he contends that without his knee brace, he could not have been running into doors and walls.  (ECF No. 156 at 11; ECF No. 157 at 3.)  In an affidavit, Mr. Lyons states that CO Simpson "grabbed [him] lifting him and ran [him] down the tier into cell doors walls and eventually into a locked shower door causing numerous injuries to [him]."  (Ex. 28 to ECF No. 156 at 1-2.)  A medical record dated August 16, 2008 indicates that Mr. Lyons had injuries to his right eye, right side ribs, and right shoulder.  (Ex. 3 to ECF No. 157.)  A Provider Encounter Form indicates that on August 18, 2008 Mr. Lyons presented with injuries, including bruising around his right eye and on his right shoulder.  (Ex. 5 to ECF No. 157.)  Another record indicates that when Mr. Lyons saw Dr. Poshkus on August 22, 2008, he had pains associated with his injuries and bruising on his shoulders.  (Ex. 2 to ECF No. 157.)

While it is undisputed that Mr. Lyons sustained injuries while being transported to the shower on August 15, 2008, the manner in which Mr. Lyons sustained those injuries remains in dispute.[17]  CO Simpson presents evidence indicating that Mr. Lyons resisted a passive escort and harmed himself, while Mr. Lyons presents evidence from which one could reasonably infer that excessive force was used.  It would be improper for the Court to weigh this evidence.  *See Zambrana-Marrero v. Suarez-Cruz*, 172 F.3d 122, 129 (1st Cir. 1999).  Drawing all reasonable inferences in Mr. Lyons' favor, "the evidence presents a sufficient disagreement to require submission to a jury."  *Anderson*, 477 U.S. at 251-52.  Therefore, as to the August 15, 2008 incident, CO Simpson's motion for summary judgment is DENIED.

---

[16] According to his Inmate Discipline Report, Mr. Lyons was charged with two infractions on August 15, 2008:  (i) "Willfully Disfiguring, Damaging, and/or Destroying"; and (ii) "Interfering with the Duties of a Correctional Offi[cer]."  (Ex. 29 to ECF No. 156.)  The latter charge appears to have been dismissed.  *Id.*

[17] Unlike the Court in *Skinner v. Cunningham*, this Court has not been provided with a video of the incident.  *See* 430 F.3d at 488-89.

**August 16, 2008**

The Complaint's third incident occurred the following day, August 16, 2008, and also involved Mr. Lyons being escorted from his cell. (ECF No. 34 at 9-10.) Mr. Lyons was on camera and once again complied with Lt. Sayles' directive to "cuff up." *Id.* Then CO LeDuc and another RI DOC employee ran Mr. Lyons into a locked shower door. *Id.* at 9. Mr. Lyons' resulting bruising and dizziness were documented by a nurse, and photographed by Lt. Sayles, who claimed that Mr. Lyons' injuries were self-inflicted. *Id.* at 9-10.

Lt. Sayles seeks summary judgment on the same bases asserted with respect to the August 15, 2008 incident: he is not alleged to have been involved with any activity causing any harm to Mr. Lyons and further cannot be held liable as a supervisor under § 1983. (ECF No. 143 at 5-6.) For the same reasons discussed in connection with the August 15, 2008 incident, Lt. Sayles is entitled to summary judgment with respect to the allegation that he was a supervisor and did not intervene when Mr. Lyons was injured.

Unlike the August 15, 2008 incident, Mr. Lyons contends that on August 16, 2008 when Lt. Sayles photographed him, Lt. Sayles told him that he would say that Mr. Lyons had self-inflicted his injuries. *Id.* at 5. In response to this contention, Lt. Sayles provides an affidavit wherein he states that Mr. Lyons was escorted to cell #2 without incident, placed in cell #2, and then when he was retrieved from cell #2, he had a fresh wound. (ECF No. 143-3 at 3.) Lt. Sayles states that Mr. Lyons "must have inflicted this injury upon himself while confined to cell #2." *Id.* Lt. Sayles also submitted an Incident Report that contains a brief description of events, but does not mention Mr. Lyons' allegation that Lt. Sayles would claim Mr. Lyons had self-inflicted his injuries. *Id.* at 4.

20

In response to the argument regarding Lt. Sayles' statement that he self-inflicted his injuries, Mr. Lyons submitted an affidavit wherein he states that Lt. Sayles said "I will say you self inflicted" and further explains that Lt. Sayles wrote a disciplinary infraction for him that day for self mutilation, and that infraction was dismissed. (Ex. 30 to ECF No. 156 at 2.) Mr. Lyons submitted his Inmate Discipline History Report:  it shows an 8/16/2008 offense called "Mutilating Oneself" that was "DISMISS[ED]." (Ex. 29 to ECF No. 156.)

Based on the evidence before the Court, on August 16, 2008, Lt. Sayles photographed an injured Mr. Lyons and Lt. Sayles voiced his opinion that Mr. Lyons' injuries were self-inflicted. This alleged incident —Lt. Sayles' statement that he would say that Mr. Lyons self-inflicted— is not actionable under the Eighth Amendment.[18]  Further, Mr. Lyons has alleged no harm resulting from Lt. Sayles photographing him.  Therefore, Lt. Sayles is entitled to summary judgment in connection with the August 16, 2008 incident.

Turning to CO LeDuc's involvement with the August 16, 2008 incident, CO LeDuc argues that although there is "some evidence . . . of an assault," the "overwhelming evidence runs contrary to [Mr. Lyons'] version" of events such that a jury would not find in Mr. Lyons' favor. (ECF No. 143 at 9.)  CO LeDuc submits an affidavit wherein he explains that Mr. Lyons was transported to another cell so his cell could be cleaned;[19] the transfer occurred "without incident"; Mr. Lyons spent some time in this other cell; during the transport back to the original

---

[18] Verbal threats by a correctional officer to a prisoner, without more, usually do not constitute cruel and unusual punishment. *See, e.g.*, *Skinner*, 430 F.3d at 489 ("slamming of [ ] cell door, threats, discourtesies, epithets, and false charges on petty matters . . . [do] not amount to an Eighth Amendment violation").

[19] An August 16, 2008 Incident Report indicates that Mr. Lyons stuffed a roll of toilet paper in the toilet, causing it to overflow, and he wrote on the cell walls with his own feces. (ECF No. 143-3 at 4.)

cell, CO LeDuc noticed that Mr. Lyons had a fresh wound on his cheek; and Mr. Lyons was brought to a nurse for evaluation. (ECF No. 143-6 at 1-2.)[20]

In response, Mr. Lyons describes being "slammed into a shower door" by CO LeDuc and another RI DOC employee. (ECF No. 156 at 3.) In an affidavit, Mr. Lyons states that he was grabbed by CO LeDuc and another CO and slammed into a shower door causing injuries to his cheek and eye. (Ex. 30 to ECF No. 156 at 1-2.) Mr. Lyons provides a medical record indicating that on August 16, 2008 he had pain and injuries on his right eye, right side ribs, and right shoulder. (Ex. 3 to ECF No. 157.) Another record indicates that his injuries remained visible on August 18, 2008. (Ex. 5 to ECF No. 157.) Mr. Lyons contends that he was assaulted by CO LeDuc and others, and they tried to cover it up by saying he self-inflicted his injuries. (ECF No. 156 at 10.)

Like the allegations regarding CO Simpson's behavior one day earlier, the Court is faced with undisputed evidence that Mr. Lyons was injured on August 16, 2008, as well as evidence supporting two different explanations for the cause of those injuries: CO LeDuc's evidence indicates that Mr. Lyons resisted a passive escort and later harmed himself, while from the evidence submitted by Mr. Lyons, once could reasonably infer that he was assaulted.[21] The Court cannot weigh this evidence. *Zambrana-Marrero*, 172 F.3d at 129. Drawing all reasonable inferences in Mr. Lyons' favor, "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52. Therefore, as to the August 16, 2008 incident, CO LeDuc's motion for summary judgment is DENIED.

---

[20] CO Leduc also argues that because of Mr. Lyons' history of self-inflicting, manipulative behavior, and filing lawsuits that were dismissed, Mr. Lyons' allegations against him should be dismissed. (ECF No. 143 at 9.) This argument lacks merit.

[21] Like the incident a day earlier, no video of the August 16, 2008 incident was provided to the Court.

**September 4, 2008**

The Complaint's fifth incident occurred on September 4, 2008. (ECF No. 34 at 11.) Mr. Lyons was in a cell with a camera and Captain Aceto ordered him to strip and then gassed him. *Id.* Mr. Lyons showered and then was told by Captain Aceto that "This is just a warning you will now be nude in this cell." *Id.* Mr. Lyons further explained that he told a nurse that he "will cut [his] wrist and bleed out." *Id.* at 11-12.

Captain Aceto presents evidence of a very different version of events, a version supported by affidavits from two COs and his own affidavit.[22] (ECF Nos. 143-10, 143-11, 152.)[23] Those affidavits specify that Mr. Lyons indicated he was going to kill himself; Mr. Lyons was placed on "Crisis Management Status" as he needed to be monitored for possible suicidal behavior or intentions; Mr. Lyons defecated in his cell and wrote on his cell wall with his feces; Mr. Lyons was attempting to cut his wrists and ordered to stop; Mr. Lyons refused to stop; Mr. Lyons was sprayed with a chemical agent and then ceased his self-injurious behavior; Mr. Lyons refused to be cuffed, shower, or accept medical treatment; Mr. Lyons was sprayed again; Mr. Lyons was cuffed, transported, showered, and received medical treatment; Mr. Lyons cleaned his cell; and Mr. Lyons showered again. *Id.*

Captain Aceto argues entitlement to summary judgment because Mr. Lyons has no support for his allegations. (ECF No. 143 at 11-13.) Mr. Lyons counters by contesting Captain Aceto's version of events, relying on an Inmate Discipline History Report and his own affidavit for support. (ECF No. 156 at 11-13; Exs. 31, 32, 33, 34 to 156; ECF No. 157 at 15-21.) The

---

[22]   Mr. Lyons points out that Captain Aceto and others incorrectly state that this incident occurred in 2009; Mr. Lyons' papers and the incident report indicate that the incident happened in 2008. *Compare*, *e.g.*, ECF No. 143-11 at1 (2009) *with* Ex. 31 to ECF No. 156 at 1 (2008). The actual date is immaterial to the Court's analysis.
[23]   Captain Aceto also submitted affidavits and medical notes from two nurses regarding Mr. Lyons' behavior on other dates. (ECF Nos. 143-1, 143-12.)

Inmate Discipline History Report shows no infractions on September 4 or 5 in 2008, and Mr. Lyons contends that if he had done what Captain Aceto alleged, then he would have been disciplined. (Ex. 32 to ECF No. 156; ECF No. 157 at 17, 18, 19.) In his affidavit, Mr. Lyons states that Captain Aceto did not mention that "at 12:15 am on September 5, 2008 . . . [Mr. Lyons] did cut his wrist severely while [Captain] Aceto watched . . . ." (Ex. 31 at ECF No. 56 at 2.)

It is undisputed that Captain Aceto sprayed Mr. Lyons in an attempt to stop Mr. Lyons from "severely" cutting his wrist. In this context, [p]rison officials are given 'wide-ranging deference' in their measures to restore order . . . ." *Torres-Viera v. Laboy-Alvarado*, 311 F.3d 105, 108 (1st Cir. 2002) (quoting *Whitley*, 475 U.S. at 321-22). Viewing the evidence before the Court in Mr. Lyons' favor, there is no evidence from which the Court can reasonably infer that Captain Aceto acted maliciously or sadistically, or with deliberate indifference, towards Mr. Lyons. Therefore, summary judgment shall enter for Captain Aceto in connection with the September 4, 2008 incident.

## 2. Self-Inflicted Injuries

Mr. Lyons contends that several ACI Defendants violated his Eighth Amendment rights in connection with four incidents where Mr. Lyons self-inflicted injuries. In three of the incidents, Mr. Lyons specifies that he cut his wrist. (ECF No. 34 at 12, 18, 22.) In the other incident, Mr. Lyons does not specify where he injured himself, but he indicates that the injury produced "blood on the cell floor sink wall door windows." *Id.* at 16. While each incident is unique, there is a common theme: Mr. Lyons prefers to be in a cell with a camera; when he is not in a camera cell, or is about to be transferred from a camera cell, he threatens suicide or injures himself. (*See, e.g., id.* at 7, 17; ECF No. 157 at 4; ECF No. 373-1 at 3.)

"The failure of correctional officials to provide inmates with adequate medical care may offend the Eighth Amendment if their acts or omissions [are] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Leavitt v. Corr. Med. Servs., Inc.*, 645 F.3d 484, 497 (1st Cir. 2011) (internal quotation marks and citation omitted). Within the context of a prisoner's medical needs, "[d]eliberate indifference thus defines a narrow band of conduct . . . ." *Feeney v. Corr. Med. Servs., Inc.*, 464 F.3d 158, 162 (1st Cir. 2006) (internal quotation marks omitted). To establish a constitutional violation, "[t]he care provided must have been 'so inadequate as to shock the conscience.'" *Id.* (quoting *Torraco v. Maloney*, 923 F.2d 231, 235 (1st Cir. 1991)).

### September 4 – September 5, 2008

In the Complaint's sixth incident, Mr. Lyons alleges that Captain Aceto laughed as he watched Mr. Lyons rip a piece of plastic from his cell and use it to "severely cut his wrist." (ECF No. 34 at 12.) Mr. Lyons needed transport by EMTs to Rhode Island Hospital. *Id.* Although Mr. Lyons' prescription footwear was available, Captain Aceto forced Mr. Lyons to go barefoot —with his "feet covered in blood"— when he obtained medical treatment for the self-inflicted injury. *Id.*

Mr. Lyons admits that he "cut his wrist severely" in the presence of Captain Aceto. (Ex. 31 to ECF No. 156 at 2; *see also* ECF No. 34 at 12.) An incident report notes that after Mr. Lyons "sliced his left wrist," "a nurse was sent to evaluate the wound," "Mr. Lyons was treated with a pressure dressing," and he was "sent out to Rhode Island Hospital Emergency room via Cranston rescue." (Ex. 34 to ECF No. 156.)

Although whether Captain Aceto laughed at Mr. Lyons is in dispute (ECF No. 143-11 at 2-3), this dispute is immaterial because under these circumstances laughter does not give rise to

25

an Eighth Amendment claim. *See, e.g., Skinner*, 430 F.3d at 489. Further, under these circumstances, Captain Aceto's causing Mr. Lyons to obtain medical attention without his prescription footwear does not give rise to an Eighth Amendment claim: Mr. Lyons "severely" cut his wrist; Mr. Lyons' feet were bloody; and Mr. Lyons needed transport by EMTs to Rhode Island Hospital. Here, Mr. Lyons objects not to the lack of medical care, but to the course of treatment, and this course of treatment does not shock the conscious. *See Feeney*, 464 F.3d at 162 (quoting *Torraco*, 923 F.2d at 235). As such, Captain Aceto is entitled to summary judgment with respect to the sixth incident.

### November 7, 2008

The Complaint's eighth incident occurred on November 7, 2008 when Mr. Lyons was cuffed and told he was being moved to another cell. (ECF No. 34 at 15-16.) Later, when Mr. Lyons was in the new cell, Mr. Lyons told another defendant to get a nurse as he was suicidal "or there will be blood everywhere." *Id.* at 16. A nurse was not summoned, and Mr. Lyons injured himself. *Id.*

No allegations in the Complaint connect Captain McDonough to harmful conduct on November 7, 2008. Captain McDonough therefore cannot be held liable pursuant to § 1983 in connection with this incident. *See Cepero-Rivera v. Fagundo*, 414 F.3d 124, 129 (1st Cir. 2005) ("only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable"). Moreover, although Mr. Lyons does not allege that Captain McDonough is responsible as a supervisor, such a claim also would fail because Captain McDonough cannot be held vicariously liable as such under § 1983. *See Maldonado-Denis*, 23 F.3d at 581-82. Summary judgment shall enter for Captain McDonough in connection with the November 7, 2008 incident.

**February 20, 2009**

The eleventh incident[24] occurred on February 20, 2009: Lt. Sayles informed Mr. Lyons that he was being moved to a cell without a camera. (ECF No. 34 at 18.) When Mr. Lyons arrived in the new cell, he alleges that he threatened suicide and Lt. Sayles responded by saying "cut yourself or kill yourself you are not seeing a nurse." *Id.* Mr. Lyons proceeded to cut his wrist and needed ten stiches. *Id.*

Lt. Sayles argues that Mr. Lyons is a "manipulator" who pretends to be suicidal so that he will be housed in a cell with cameras, even though he has no right to a particular cell. (ECF No. 143 at 6-8.) Lt. Sayles contests the accuracy of Mr. Lyons' allegation that Mr. Lyons told him he was suicidal: according to Lt. Sayles' affidavit, Mr. Lyons told Lt. Sayles that in the past he "had cut himself several times because he had not been in a camera cell." (ECF No. 143-3 at 2.) Lt. Sayles' affidavit further states that Mr. Lyons did not indicate he was going to cut himself, nor did he "indicate he was suicidal requesting to see a nurse." *Id* at 3. In addition, Lt. Sayles states that he did not tell or encourage Mr. Lyons to injure himself. *Id.*

In response, Mr. Lyons contends that he told Lt. Sayles "get the nurse or I'm cutting. . . ." (ECF No. 157 at 5.) Mr. Lyons asserts that Lt. Sayles failed to follow RI DOC policy when he did not get a nurse. *Id.* at 4-6. Mr. Lyons further states that he cut an "artery." *Id.* at 6.

Drawing all reasonable inferences in Mr. Lyons' favor, and accepting the admissible allegations in the Complaint, the Court finds that in the context of Mr. Lyons being told that he was being transferred to a cell without a camera, Lt. Sayles' failure to summon a nurse in response to Mr. Lyons' threat to harm himself does not rise to the level of an Eighth Amendment

---

[24] The Complaint states the date as February 20, 2008, but the Court infers that Mr. Lyons meant 2009 because all the incidents alleged, except for this one, appear in chronological order. Further, Mr. Lyons refers to the date as February 20, 2009 in his objection. (ECF No. 156.) The actual date is immaterial to the Court's analysis.

violation.[25]   While the failure to provide medical care in some circumstances can violate the Eighth Amendment, here, given the totality of the circumstances understood by Lt. Sayles at the time, Lt. Sayles' behavior was not unreasonable.  *See Farmer*, 511 U.S. at 845; *see also Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004) (noting that "[s]ome prisoners are manipulative and cry 'wolf' in an effort to have a cell to themselves . . .").  Mr. Lyons has a history of self-inflicting in attempt to avoid being housed in cells without cameras.  (*See, e.g.*, ECF No. 34 at 7; ECF No. 157 at 4.)  Mr. Lyons does not allege that his self-inflicting is caused by an untreated medical condition, nor does Mr. Lyons allege that he did not receive appropriate care for the wound he self-inflicted.[26]   The only "harm" that Lt. Sayles is alleged to have a caused is telling Mr. Lyons that if he cut himself, he will not see a nurse.  Even if there was competent evidence that Lt. Sayles made this statement, it would not survive summary judgment.  *See, e.g.*, *Skinner*, 430 F.3d at 489.  Consequently, summary judgment shall enter for Lt. Sayles in connection with the February 20, 2009 incident.

### June 20, 2009

The fifteenth incident occurred on June 20, 2009 when Mr. Lyons was taken out of a camera cell by Lt. Sayles.  (ECF No. 34 at 22.)  Mr. Lyons cut his wrist and received eight stiches.  *Id.*  Mr. Lyons alleges that his movement to a cell without a camera demonstrates that Lt. Sayles is deliberately indifferent because Lt. Sayles knew that Mr. Lyons becomes paranoid when moved off camera and fears being assaulted.  *Id.*

---

[25]  Further, Mr. Lyons' contention that Lt. Sayles did not follow RI DOC policy is insufficient to state a constitutional claim.  *See Boveri v. Town of Saugus*, 113 F.3d 4, 7 (1st Cir. 1997) ("A regulatory violation . . . is not inherently sufficient to support a § 1983 claim.").
[26]  Medical records submitted by Mr. Lyons indicate that he received care for his February 20, 2009 cut wrist.  (Exs. 37, 38 to ECF No. 156.)

Mr. Lyons does not allege that Lt. Sayles caused harm to him, nor does he contend that it was Lt. Sayles who ordered him moved to another cell. Mr. Lyons does not have the right to choose his cell. *See, e.g., Lyon v. Farrier*, 727 F.2d 766, 768-69 (8th Cir.1984). Lt. Sayles has demonstrated entitlement to judgment as a matter of law, and Mr. Lyons has failed to show that any material facts are in dispute. Consequently, Lt. Sayles is entitled to summary judgment in connection with the June 20, 2009 incident.

## B.   Fourteenth Amendment Claims

Three defendants —Investigator Cabral, Lt. Doyle, and Captain McDonough— are alleged to have been involved with a disciplinary hearing related to a letter dated March 5, 2009 that Mr. Lyons sent to Dr. Poshkus. (ECF No. 34 at 18-20.)[27]   Mr. Lyons alleges that his Fourteenth Amendment Due Process rights were violated in connection with the disciplinary hearing because he was not permitted to see the contents of the letter, call witnesses, or question witnesses. *Id.*

The Complaint provides the following:  Captain McDonough opened a March 5, 2009 letter that Mr. Lyons sent to Dr. Poshkus and wrote a disciplinary infraction against Mr. Lyons for sending contraband. *Id.* at 19.  On March 10, 2009, a disciplinary hearing, chaired by Lt. Doyle, was held. *Id.*  At that hearing, Mr. Lyons asked to see the envelope, letter, and alleged contraband. *Id.*  Lt. Doyle responded that Mr. Lyons would not see "the contents." *Id.* Mr. Lyons claims that he has the right to see this material pursuant to an unspecified RI DOC policy. *Id.*  Mr. Lyons then asked to call witnesses, but Lt. Doyle denied this request. *Id.*  A counselor agreed with Mr. Lyons that he had the right to call and question witnesses. *Id.*  On

---

[27] This is the twelfth incident in the Complaint.

March 20, 2009, Mr. Lyons was found guilty. *Id.* at 20. Finally, Investigator Cabral told Mr. Lyons that he would not be getting back the evidence. *Id.*

Investigator Cabral, Lt. Doyle, and Captain McDonough seek summary judgment because Mr. Lyons' liberty interest under *Sandin* has not been implicated as his 30 day punishment does not, as a matter of law, implicate the Due Process Clause. (ECF No. 143 at 13-15.) In support of their motion, they submit an affidavit from CO Haibon explaining that the letter sent by Mr. Lyons was retrieved and opened because it contained a "suspicious bulge" later determined to be "controlled medication"; Mr. Lyons was issued a disciplinary infraction for attempting to smuggle a "control[led] substance"; Mr. Lyons was found guilty of the infraction; and Mr. Lyons was issued 30 days segregation and loss of good time. (ECF No. 143-13.)

In response, Mr. Lyons contends that the hearing was in violation of RI DOC policy 11.01-5 and his constitutional rights were violated. (ECF No. 156 at 13, 15.) In addition, he submitted an affidavit explaining that the disciplinary hearing violated RI DOC Policy 11.01-5, specifying that his punishment was 30 days segregation and 30 days loss of good time, and asserting that an unspecified RI DOC policy mandates that narcotic medications are crushed. (Ex. 35 to ECF No. 156.)

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson*, 545 U.S. at 221. Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Rodi v. Ventetuolo*, 941 F.2d 22, 24 (1st Cir. 1991) (quoting *Kentucky Dept. of Corrs.*, 490 U.S. at 460).

Here, it is undisputed that Mr. Lyons received a punishment of 30 days in segregation and a loss of good time.  (ECF No. 143-13, Ex. 35 to ECF No. 156.)  Mr. Lyons has no liberty interest in avoiding 30 days of segregation and loss of good time.  *See Sandin v. Connor*, 515 U.S. 472, 484 (1995) (punitive segregation for a term of 30 days does not trigger the protections of the Due Process Clause because it does not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life").  Therefore, the absence of particular procedural safeguards at the disciplinary hearing did not violate Mr. Lyons' Fourteenth Amendment Due Process rights.

Additionally, to the extent Mr. Lyons is claiming that Investigator Cabral, Lt. Doyle, and Captain McDonough violated his rights because they allegedly acted contrary to department policy, this claim also fails.  A violation of department policy, in and of itself, is insufficient to support a § 1983 claim.  *See Boveri*, 113 F.3d at 7.

Accordingly, Investigator Cabral, Lt. Doyle, and Captain McDonough have demonstrated that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law on Mr. Lyons' claims that they violated his Fourteenth Amendment Procedural Due Process rights.  Their motion for summary judgment is GRANTED and the Fourteenth Amendment claims against them are dismissed.

C.    Conclusion

The ACI Defendants' Motion for Summary Judgment (ECF No. 143) is GRANTED IN PART AND DENIED IN PART.  The Motion for Summary Judgment is GRANTED as to the following five defendants:  (i) Captain Aceto; (ii) Investigator Cabral; (iii) Lt. Doyle; (iv) Captain McDonough; and (v) Lt. Sayles.  Captain Aceto, Investigator Cabral, Lt. Doyle, Captain

McDonough, and Lt. Sayles are DISMISSED.  As to CO Simpson and CO LeDuc, the Motion for Summary Judgment is DENIED.

### V.    MR. LYONS' MOTIONS FOR SUMMARY JUDGMENT

Mr. Lyons has two pending motions for summary judgment.  (ECF Nos. 246, 286.)  In the first, he seeks summary judgment on his claims against the ACI Defendants.  (ECF No. 246 at 2.)  In the second, he seeks summary judgment on part of his case.  (ECF No. 286 at 1.)

Mr. Lyons' motion seeking summary judgment against the ACI Defendants contains factual allegations, references to discovery responses and documents, as well as rhetorical questions.  (ECF No. 246.)  The motion does not demonstrate that the facts alleged in the Complaint are undisputed, nor does it show that Mr. Lyons is entitled to judgment against the ACI Defendants as a matter of law.  In support of this motion, Mr. Lyons filed a SUF containing content similar to the motion, but presented in numbered paragraphs.  (ECF No. 247.)

Dr. Matkovic objected to this motion, pointing out that it does not pertain to either him or Dr. Friedman, but arguing that even if it did pertain to them, Mr. Lyons has not met his burden to show that he is entitled to summary judgment.  (ECF No. 250.)  The ACI Defendants[28] objected to this motion on the grounds that Mr. Lyons' failure to request leave to file the motion violates LR Cv 56(c) because Mr. Lyons already filed a motion for summary judgment.[29]  (ECF No. 258.)  Dr. Friedman objected, making arguments similar to both the ACI Defendants and Dr. Matkovic.  (ECF No. 264.)

Reviewing the record before the Court in the light most favorable to the non-moving parties, Mr. Lyons' motion for summary judgment against the ACI Defendants does not

---

[28]  Some other defendants associated with the ACI pressed the objection as well, but those defendants have been dismissed.
[29]  The Court denied Mr. Lyons' earlier Motion for Summary Judgment (ECF No. 78) on March 17, 2010.  (ECF No. 101.)

demonstrate that the facts alleged in the Complaint are undisputed, nor does it demonstrate that Mr. Lyons is entitled to judgment as a matter of law. In addition, Mr. Lyons' motion violates LR Cv 56(c) because he already moved for summary judgment and failed to seek the Court's permission to file the motion at issue. Mr. Lyons' motion for summary judgment (ECF No. 246) is therefore DENIED.

Mr. Lyons later moved for partial summary judgment, seeking summary judgment as to liability only. (ECF No. 286.) This motion contains factual allegations pertaining to numerous incidents included in the Complaint, as well as rhetorical questions and references to several disciplinary infractions. In support of this motion, Mr. Lyons filed documents pertaining to his need for sneakers, a notice regarding two mattresses, a copy of his Inmate Discipline History Report, and medical records. (ECF No. 286.) Mr. Lyons did not seek leave to file the motion, nor did he file an accompanying SUF.

Dr. Matkovic and the ACI Defendants[30] opposed this motion. (ECF Nos. 291, 293.) Dr. Matkovic contends that, to the extent the motion pertains to claims against him, Mr. Lyons is not entitled to summary judgment and further points out that Mr. Lyons filed the motion in violation of an Order issued by Chief Judge Lisi (ECF No. 254 at 2) directing Mr. Lyons to stop filing motions until the Court ruled on all pending motions. (ECF No. 291.) The ACI Defendants contend that the motion should be denied because Mr. Lyons violated LR Cv 56(c) by failing to seek leave of Court to file the motion and violated LR Cv 56(a) by failing to file a statement of undisputed facts. (ECF No. 293.)

Like Mr. Lyons' motion seeking summary judgment against the ACI Defendants discussed *supra*, when viewed in the light most favorable to the non-moving parties, the motion

---

[30] Other defendants associate with the ACI pressed objection as well, but they have already been dismissed.

seeking partial summary judgment does not demonstrate that Mr. Lyons is entitled to judgment as a matter of law on liability, nor does it demonstrate that Mr. Lyons is entitled to findings pertaining to the liability of certain defendants. Further, this motion was filed in violation of Chief Judge Lisi's Order (ECF No. 254), as well as LR Cv 56(a) and LR Cv 56(c). As such, Mr. Lyons' Motion for Summary Judgment (ECF No. 286) is DENIED.

VI.   <u>CONCLUSION</u>

For the reasons stated above, Dr. Friedman's Motion for Summary Judgment (ECF No. 105) is GRANTED and Dr. Friedman is DISMISSED; Dr. Matkovic's Motion for Summary Judgment (ECF No. 107) is GRANTED and Dr. Matkovic is DISMISSED; the ACI Defendants' Motion for Summary Judgment (ECF No. 143) is GRANTED IN PART AND DENIED IN PART and Captain Aceto, Investigator Cabral, Lt. Doyle, Captain McDonough, and Lt. Sayles are DISMISSED; and Mr. Lyons' Motions for Summary Judgment (ECF Nos. 246, 286) are DENIED.

Remaining in this case are defendants CO Simpson and CO LeDuc, and Mr. Lyons' allegations that they violated his Eighth Amendment rights on August 15, 2008 and August 16, 2008, respectively. All other allegations and all other defendants have been DISMISSED.

Since the Court has decided all motions pending in this matter, the order preventing Mr. Lyons from filing any additional motions in this case (ECF No. 254) is lifted. The Court therefore deems the August 18, 2011 Report and Recommendation (ECF No. 301) moot and rejects it. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

IT IS SO ORDERED.

John J. McConnell, Jr.
United States District Judge
August 24, 2012

34